FARMERS AND CITIZENS' BANK *vs.* PAYNE.

A bill of exchange is evidence against an acceptor, in favor of an endorsee, under the common count for money had and received.

The case of *Eagle Bank* v. *Smith,* 5 Conn., '71, referred to and approved.

The knowledge of a director of a bank, as to the object for which certain bills of exchange were delivered to a party applying to the bank for a discount thereof, such director not being present at the meeting of the directors at which such application was made and such bills discounted, and not having communicated his knowledge to any other director or officer of the bank, is not to be regarded as notice to the bank.

THIS was an action of assumpsit, brought by the plaintiffs as endorsees, against the defendant as acceptor, of three bills of exchange, drawn on him by Nathaniel Greene, agent, and endorsed by John F. Greene.

The declaration contained three special counts, and a general count embracing a claim for money had and received. The case was tried to the jury on the general issue, at the term of the superior court holden in the county of Fairfield, in October, 1856.

On the trial, the defendant objected to the bills offered in evidence by the plaintiffs, under both the special counts and the general count, because of a variance claimed by him between the bills and the description thereof in the special counts, and because they did not support the general count. The court overruled the objection and admitted them under both the special counts and the general count. The details of the variance claimed to exist, are not important in the view of the case taken by this court.

Farmers and Citizens' Bank *v.* Payne.

The plaintiffs offered evidence to prove that, before the transfer to them of the bills in suit, three other bills of about the same amount, of the same general form, and drawn and accepted by the same parties and payable to the order of John F. Greene, had been endorsed by said John, and transferred to the plaintiffs before their maturity, as security for a "call loan" of $8,700, made to him by the plaintiffs, he stating to them that said bills had been made and accepted for wool sold, and were fair business paper : that about sixteen days after, they requiring payment, and said bills being nearly due, said John stated to them that said wool was sold upon six months' credit, and that said bills were drawn for a shorter time to enable him to negotiate them at the bank ; and that now, in order to carry out said agreement for six months' credit, he had taken a new set of bills, (which were the bills in suit,) which he requested the plaintiffs to discount for him, and with the proceeds pay said loan, and pay over to him the balance in money, assuring them that said new bills were, like the first, good business paper, and would be paid when due ; and that the plaintiffs, relying upon said assurances, discounted said new bills upon the usual terms, and appropriated and paid over the proceeds as requested, and gave up said first mentioned bills to said John : that said loan was paid to said John in cash, and no part of it, or of the proceeds of said discounted bills, applied in payment of any antecedent debt due to said bank ; and that said bank in good faith received said bills as good business paper, and had no knowledge that any of them had been drawn, accepted or delivered to said John, for any specific purpose, or that he had not good right to dispose of them and the proceeds thereof at his pleasure.

The defendant offered evidence to prove that N. Greene, who drew the bills in suit, was his agent for the transaction of the business connected with certain mills owned by him, and before the bills in suit were drawn, had been accustomed, as such agent, to draw upon him bills of exchange for wool purchased for the use of said mills, which he had been accustomed to accept ; that before the drawing of the bills claimed

to have been taken by the plaintiffs as security for said loan, another set of three bills, amounting to about $10,000, had been drawn by said N. Greene as agent, upon the defendant, and by him accepted for the accommodation of said John F. Greene, and had been used by him for his own benefit ; that said bills were drawn, accepted and delivered to said John, for the sole purpose of renewing and taking up said first set of bills, and upon his agreement that they should be appropriated to that purpose only ; and that the bills in suit were in like manner drawn and accepted for the sole purpose of taking up said second set, (which said John represented to the defendant to be then held by one Howes,) and were delivered to him upon his agreement to appropriate them to that use and to no other, the defendant then supposing that said first set had been taken up and canceled : that neither the drawer nor acceptor of said bills received any consideration for drawing or accepting them, but did it solely for the accommodation of said John ; and that he, in violation of his agreement, had fraudulently used said second and third sets of bills for his own benefit, leaving said first mentioned set outstanding and unprovided for; and that said John, when said bills were drawn, knew that said N. Greene acted as the agent of the defendant in drawing them, and that said John was, during all that time, and until after said last mentioned set were discounted, an acting director of said bank. No evidence, however, was offered to prove that he ever communicated to any other director, or to any officer or agent of said bank, his knowledge of the purpose for which said bills had been drawn and accepted, or any notice that they were delivered to him for any specific purpose whatever.

The defendant claimed that notice to the said John F. Greene, he being a director of said bank, was notice to said bank, and prayed the court to charge the jury that if they should find that the bills in suit were in fact delivered to the said John F. Greene for the specific purpose claimed by the defendant, and were transferred to the plaintiffs by him, in violation of his duty in regard to said bills, and that he was then a director of said bank, the verdict should be for the defendant.

The court charged the jury that in negotiating with the plaintiffs for the transfer of the bills to them, said John F. Greene was to be considered as a party acting for himself, and not for said bank, or as a director or agent thereof, and that the plaintiffs were not to be charged with the knowledge possessed by him only, unless that knowledge was in fact communicated to some other officer or agent or director of said bank, acting in its behalf in that transaction. And that if the bills in suit were, as the defendant claimed, drawn, accepted and delivered to the said John F. Greene for the purpose of renewing or taking up other outstanding bills accepted by the defendant, and were misappropriated by him in fraud of the defendant, by procuring them to be discounted, or otherwise appropriating them or the proceeds thereof to his own use, leaving the old bills outstanding and unprovided for, and the plaintiffs knew or had notice of such misappropriation, then they were not entitled to a verdict; but that without such notice or knowledge, such misappropriation constituted no defense to this suit.

The jury returned a general verdict for the plaintiffs, and the defendant moved for a new trial for a misdirection, and for error in the admission of the evidence objected to.

*Dutton* and *Warner*, in support of the motion.

1. If the plaintiffs knew that the bills were delivered to John F. Greene for a specific purpose, and were negotiated by him in violation of his agreement, they clearly can not recover. Chit. on Bills, (12th Am. ed.,) 80. Story on Prom. Notes, sec. 190. *Denniston* v. *Bacon*, 10 John., 198.

2. If at the time they were taken by the bank, John F. Greene was an acting director of the bank, his knowledge of the facts was notice to all the directors, and sufficient to charge the bank with the knowledge. 1 Pars. on Cont., 66. *U. S. Bank* v. *Davis*, 2 Hill, 451. *North River Bank* v. *Aymar*, 3 Hill, 262. The court erred in its charge to the jury on this point, and in not submitting to them exclusively the question of fact involved.

3. The bills do not answer the description of them given

in the special counts, and are not admissible in support of the common counts. Chit. on Bills, (12th Am. ed.,) 560, 579.

*Hawley* and *Beardsley*, contra.

1. The plaintiffs are not chargeable with the knowledge of John F. Greene with regard to the bills discounted by them. Ang. & Ames on Corp., sec. 306, 308. *Washington Bank* v. *Lewis*, 22 Pick., 24. *Commercial Bank* v. *Cunningham*, 24 Pick., 270. *Housatonic Bank* v. *Martin*, 1 Met., 294. *Hartford Bank* v. *Hart*, 3 Day, 491. *Brush* v. *Scribner*, 11 Conn., 388. *Fairfield Co. Turnpike Co.* v. *Thorp*, 13 Conn., 173. *Butler* v. *Cornwall Iron Co.*, 22 Conn., 335. *National Bank* v. *Norton*, 1 Hill, 578. *North River Bank* v. *Aymar*, 3 Hill, 274.

2. The bills are evidence under the money counts. *Eagle Bank* v. *Smith*, 5 Conn., 71. *Rockefeller* v. *Robinson*, 17 Wend., 206. *Tatlock* v. *Harris*, 3 T. R., 174. *Martin* v. *Miller*, 4 T. R., 320. *Pierce* v. *Crafts*, 12 John., 90. *Ainslie* v. *Wilson*, 7 Cow., 662.

STORRS, C. J. It is unnecessary to examine the point made by the defendant on the trial, that the bills of exchange offered in evidence by the plaintiffs, were variant from those described in the special counts of the declaration, because we are of the opinion that the plaintiffs were entitled to recover, on the facts claimed to have been proved, under the general count, which embraced a claim for money had and received. Whatever may have been the decisions on this point elsewhere, (and there is much confusion in the cases on the subject,) we consider it to be settled, in this state, by the case of *The Eagle Bank* v. *Smith*, 5 Conn., 71.

As it is conceded that if the bills in question in this suit were drawn, accepted and delivered to John F. Greene for the purpose claimed by the defendant, and were fraudulently appropriated by said Greene to a different purpose, the plaintiffs, if they had notice of such misappropriation when they discounted them, were not entitled to recover, the remaining

question on this motion is, whether the plaintiffs are chargeable with such notice. The defendant claimed to have proved, and it must therefore be taken to be true, that Greene was an acting director of the plaintiffs' bank when these bills were discounted by the plaintiffs, and for a period previously, extending back to the time when the paper was received by the plaintiffs, out of which those bills originated. No evidence was offered to prove that Greene was present at the meeting of the directors of the bank, when any of the notes in question, or of those out of which they originated, were received or discounted by the plaintiffs; and it must therefore be taken that he was not present at any of those meetings, since, if it were otherwise, it was a fact for the defendant to show. Nor was there any evidence offered to prove that Greene ever communicated to any other director, or to any officer or agent of the bank, any knowledge of the purpose for which any of the said bills had been drawn or accepted, or delivered to him, or any notice that they were made or delivered to him for any specific purpose whatever; and it must therefore be also assumed that he never made any such communication, as there is not any presumption that he would do so, unless it was while the directors or officers of the bank were officially engaged in its business, and he was not present when any business in relation to the bills in question was transacted by the plaintiffs.

Under these circumstances, we are clearly of the opinion that the knowledge of Greene, in regard to the object and appropriation of the bills in question, is not to be considered as the knowledge of, or as notice to, the plaintiffs. The general rule on this subject is that notice of a fact to an agent is notice to the principal, if the agent has knowledge of it while he is acting for the principal in the course of the transaction which is in question. And this rule is applicable equally to corporations and natural persons. Hence, knowledge of a material fact imparted by a director of a bank to the board of directors at a regular meeting of them, is obviously notice to the bank. It has also been decided in some cases, that notice to either of the directors, while engaged in

the business of the bank, is notice to the bank. Whether, however, the knowledge of a director, who is present at a meeting of the board of directors, when paper is discounted on his application and for his benefit, is, under the rule which has been stated, to be imputed to the bank, is a question on which there is a diversity of opinion, but one which it is unnecessary here to determine. Whether such knowledge should be treated as notice to the bank in that case, would probably depend on the question whether the director should be deemed to have been acting as a director and in behalf of the bank, when the transaction took place. And it is upon that point only, that the difference of opinion which has been alluded to, arose. In all of the cases where the question was whether the principal was to be affected by the knowledge of his agent, the latter possessed such knowledge while he was acting for the former. There is none in which it has been held, or indeed claimed, that such knowledge would have that effect while he was not so engaged, nor can we conceive any good reason for the adoption of such a principle. In *The Bank of the U. States* v. *Davis*, (2 Hill, 451,) where it was claimed that the director was not acting as such in behalf of the bank while he had the knowledge by which it was sought to be affected, Ch. J. Nelson, in giving the opinion of the court, admits that, if that was the fact, such knowledge would not operate as notice to the bank; and for this he gives a most sensible and satisfactory reason. He says: " I agree that notice to a director, or knowledge derived by him, while not engaged officially in the business of the bank, can not and should not operate to the prejudice of the latter. This is clear from the ground and reason upon which the doctrine of notice to the principal through the agent rests. The principal is chargeable with this knowledge for the reason that the agent is substituted in his place, and represents him in the particular transaction; and as this relation, strictly speaking, exists only while the agent is acting in the business thus delegated to him, it is proper to limit it to such occasions." This, in our opinion, is a correct principle, and has been often recognized. See Angell &

Ames on Corp., § 305, 306, 307. Story on Agency, § 140 and notes. *North River Bank* v. *Aymar*, 3 Hill, 262. *Louisiana State Bank* v. *Senecal*, 13 Louis., 525. *H. & Lee Bank* v. *Martin*, 1 Metc., 294. *Fulton Bank* v. *N. Y. & Sharon Canal Co.*, 4 Paige, 127.

Although it is obvious, it should perhaps be remarked, that the question involved in this case, is only how far a corporation is affected by the knowledge of one of its directors, when he has no authority to act for it, excepting what is derived from the mere fact of his being such a director, and does not apply to one where some special authority is conferred on a director, other than what he would have by virtue of his being such, in which case his knowledge, while acting under such special authority, would affect his principal to the same extent as that of any other agent acting in the business in which he is employed. Here there was no claim of any such special agency.

On the ground, therefore, that Greene was not present at the meeting of the directors, when the bills here in question were discounted, and never communicated to any of the directors or officers of the bank any knowledge in regard to them, we are of the opinion that a new trial ought not to be granted, and so advise the superior court.

In this opinion the other judges, HINMAN and ELLSWORTH, concurred.

New trial not advised.